USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __9/26/2019__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PRINCIPIA PARTNERS LLC,

                Plaintiff,

-against-

SWAP FINANCIAL GROUP, LLC,

                Defendant.

18 Civ. 7998 (AT)

**ORDER**

ANALISA TORRES, District Judge:

    Plaintiff, Principia Partners, LLC, brings this action against Defendant, Swap Financial Group, LLC ("SFG"), alleging one federal law claim under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1839(3), and five state law claims: breach of contract, breach of duty of good faith and fair dealing, misappropriation of trade secrets, fraud, and negligent misrepresentation. Compl. ¶¶ 90–177, ECF No. 7. Defendant moves to dismiss all except the breach of contract claim pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, and also moves to dismiss all state law claims pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction in the event that the Court dismisses Plaintiff's only federal claim. Def. Mot. at 1, ECF No. 28. For the reasons stated below, Defendant's motion is GRANTED.

## BACKGROUND

    The following facts are taken from the complaint and are presumed to be true for the purposes of this motion. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). Plaintiff provides software services for the management of structured finance and derivative portfolios. Compl. ¶ 1. Plaintiff licenses such software, including access to software known as Principia Analytic System ("PAS" or the "software"). *Id.* ¶ 32. PAS can be used to assist with, among other things, valuing swaps.[1] On March 17, 2004, Defendant, a bond and

---

[1] "Swaps are derivative contracts that are often used to hedge interest rate risk by exchanging two financial instruments. Specifically, parties agree to exchange interest payments calculated on the same principal amount. One

swap advisor company, contracted with Plaintiff for access to PAS (the "Contract"). *Id.* ¶ 34. The Contract required, among other things, that Defendant pay Plaintiff two fees: (i) a minimum quarterly fee, and (ii) a portion of the revenue Defendant generated from reports created by PAS. *Id.* ¶¶ 35–36. After each quarter, Defendant was required to disclose the amount of its qualifying revenue in reports. *Id.* ¶ 37. The Contract allowed Plaintiff to audit Defendant twice a year to ensure the accuracy of Defendant's quarterly reports, but Plaintiff conducted no audits for the first fourteen years of the Contract, from 2004 to February of 2018. *Id.* ¶¶ 2–7.

Plaintiff eventually discovered an apparent discrepancy in the customers identified in Defendant's reports, as compared with the customers listed on Defendant's website. *Id.* ¶¶ 47–63. Defendant also did not disclose the qualifying revenue associated with these unreported clients, *id.* ¶¶ 47–49, 59, and failed to remit to Plaintiff the contractually required fees for revenue generated from such clients, *id.* ¶ 66. After Plaintiff requested clarification on these discrepancies, Defendant admitted to omitting customers. *Id.* ¶ 70. After Plaintiff's attempts to conduct an audit of Defendant's records were unsuccessful, *id.* ¶¶ 82–83, Plaintiff terminated the Contract effective June 17, 2018, *id.* ¶ 87. Plaintiff requested that Defendant certify that confidential information was returned or destroyed, but Defendant did not do so. *Id.* ¶ 89.

## DISCUSSION

I. <u>Legal Standard</u>

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations in the complaint that, accepted as true, "state a claim to relief that is plausible on its

---

party typically pays interest at a fixed rate while the other pays at a variable rate. A party with a variable rate loan can thus effectively convert to a fixed rate loan by entering into a swap in which it receives a variable interest payment equal to its loan payment in exchange for paying a fixed rate of interest to its swap counterparty. As a practical matter, swaps typically only require the parties to exchange the difference between the two rates of interest. If the variable rate of interest substantially diverges from the fixed rate, then the swap can accrue substantial value." Def. Mem. at 3 n.5, ECF No. 29.

face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (internal quotation marks omitted)). A plaintiff is not required to provide "detailed factual allegations" in the complaint, but must assert "more than labels and conclusions[] and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Ultimately, the facts pleaded in the complaint "must be enough to raise a right to relief above the speculative level." *Id*. The court must accept the allegations in the pleadings as true and draw all reasonable inferences in favor of the non-movant. *See ATSI*, 493 F.3d at 98.

Under Rule 12(b)(1), a state law claim may be dismissed for lack of subject matter jurisdiction "when the district court lacks the statutory or constitutional power to adjudicate it." *Adler v. Payward, Inc.*, No. 18 Civ. 8100, 2019 WL 4222656, at *2 (S.D.N.Y. Sept. 4, 2019) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (internal quotation marks omitted)). "[A] court confronted with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) should decide the jurisdictional question first, because a disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction." *Tompkins v. Local 32BJ, SEIU*, No. 09 Civ. 8466, 2011 WL 797706, at *2 (S.D.N.Y. Feb. 1, 2011), *report and recommendation adopted*, No. 09 Civ. 8466, 2011 WL 797708 (S.D.N.Y. Mar. 7, 2011) (internal quotation marks and citation omitted).

II. Analysis

The Court first addresses Defendant's motion to dismiss Plaintiff's sole federal claim pursuant to Rule 12(b)(6), then turns to Defendant's motion to dismiss the remaining claims under state law pursuant to Rule 12(b)(1).

A. DTSA

Under the DTSA, "[a]n owner of a trade secret that is misappropriated may bring a civil

3

action under this subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836. Defendant concedes that the trade secret in question is "access to the PAS system." Def. Reply at 9, ECF No. 31. Defendant, however, argues that it did not "misappropriate" the use of PAS under the meaning of the statute. Def. Mem. at 9–10. The Court agrees.

In order to establish that a trade secret has been "misappropriated," a plaintiff must allege:

> an unconsented disclosure or use of a trade secret by one who (i) used improper means to acquire the secret, or, (ii) at the time of disclosure, knew or had reason to know that the trade secret was acquired through improper means, under circumstances giving rise to a duty to maintain the secrecy of the trade secret, or derived from or through a person who owed such a duty.

*Free Country Ltd v. Drennen*, 235 F. Supp. 3d 559, 565 (S.D.N.Y. 2016) (internal quotation marks and citation omitted).[2]

Plaintiff claims that Defendant misappropriated the software by acquiring it through "both improper means and no consent." Pl. Mem. at 11, ECF No. 27. Specifically, Plaintiff alleges that Defendant misappropriated the software "by failing to limit use of the trade secrets as required in the contract, when the contract created both a duty to maintain their secrecy and to limit their use." *Id.* at 12 (citing Compl. ¶ 124).

However, Plaintiff fails to set forth facts that describe how Defendant's use of PAS amounts to a breach of secrecy. Under the Contract, Plaintiff "provided access to its proprietary software," and Defendant "agreed to pay a portion of the revenue generated from the use of the

---

[2] The Second Circuit has not yet addressed the DTSA in a reported opinion. However, courts in this District have concluded that the requirements for showing a misappropriation of a trade secret under the DTSA are similar to those for misappropriation under New York law. *ExpertConnect, L.L.C. v. Fowler*, No. 18 Civ. 4828, 2019 WL 3004161, at *4 n.1 (S.D.N.Y. July 10, 2019) (collecting cases).

software." Compl. ¶¶ 1–2. Plaintiff alleges unspecified "confidentiality obligations," Compl. ¶ 122, but fails to describe what those obligations were, how they restrained use of the software, or how they were violated by Defendant. *See generally* Compl. For instance, Plaintiff does not claim that Defendant used its access to PAS to compete with Plaintiff, *see, e.g.*, *ExpertConnect*, 2019 WL 3004161, at *6 (holding that plaintiff plausibly alleged a trade secrets claim where defendant obtained information "through improper means—specifically, by breaching their NDAs," and then used that information to steal plaintiff's clients), or other facts that would support a plausible inference of a confidentiality breach under the DTSA. Instead, Plaintiff merely sets forth vague and circular allegations. *See, e.g.*, Compl. ¶ 124 ("The Agreement authorizes the use of Principia Proprietary Information only in compliance with all terms and conditions of the Agreement."). The Court concludes, therefore, that Plaintiff's claims of a breach of secrecy are wholly conclusory.

Plaintiff's assertion that Defendant failed to return trade secrets also does not state a DTSA claim. *See* Compl. ¶¶ 89, 132. "Although the Second Circuit has not expressly articulated a specificity requirement, district courts in this circuit routinely require that plaintiffs plead their trade secrets with sufficient specificity to inform the defendants of what they are alleged to have misappropriated." *Medidata Solutions, Inc. v. Veeva Sys, Inc.*, No. 17 Civ. 589, 2018 WL 6173349, at *3 (S.D.N.Y. Nov. 26, 2018); *see also Big Vision Private Ltd. v. E.I. DuPont De Nemours & Co.*, 1 F. Supp. 3d 224, 258 (S.D.N.Y. 2014) (collecting cases in which the plaintiff was required to plead misappropriation of trade secrets with requisite specificity).

Plaintiff alleges that Defendant did not give back Plaintiff's "proprietary information," "documents," and "confidential information," Compl. ¶ 89, and seeks as relief under the DTSA the "return" of "Principia [p]roprietary [i]formation," *id.* ¶ 132. The complaint, however, does

not set forth particular facts that explain what this proprietary information is. Even "accept[ing] all well-pleaded factual allegations in the complaint as true, and draw[ing] all reasonable inferences in the plaintiff's favor," *Torres v. Carry*, 672 F. Supp. 2d 338, 342 (S.D.N.Y. 2009), the Court cannot discern what Plaintiff claims is proprietary and confidential apart from the software itself. As such, Plaintiff's allegation that Defendant has kept "proprietary information" does not nudge Plaintiff's DTSA claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Having held that the complaint fails to adequately allege violations of a confidentiality provision or describe the unreturned proprietary information, the Court turns to Plaintiff's argument that any breach "of an [a]greement is sufficient to plead misappropriation." Pl. Mem. at 14–15 (citing *Broker Genius, Inc. v. Zalta*, 280 F. Supp. 3d 495 (S.D.N.Y. 2017); *Free Country*, 235 F. Supp. 3d; *Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Group, Inc.*, No. 15 Civ. 211, 2016 WL 5338550 (S.D.N.Y. Sept. 23, 2016)). The cases cited do not support Plaintiff's broad assertion.

The court in *Broker Genius* held that the software in question was not a protected trade secret under the DTSA because the plaintiff had regularly given customers access to the aspects of the software that it later claimed to be confidential. 280 F. Supp. 3d at 524. The court reasoned that "the law of trade secrets is not so flexible as to allow elements of a software program that are necessarily disclosed to all of its users—without accompanying confidentiality obligations—to be classified as protectable trade secrets." *Id.* (denying plaintiff's request for a preliminary injunction). So too here. Plaintiff regularly allowed Defendant access to its software, "without notifying them of the information's confidential nature or binding them to confidentiality agreements," like in *Broker Genius*. *Id.* at 518.

6

*Syntel Sterling* also underscores that a DTSA claim requires more than a breach of contract, for it held that a DTSA claim was adequately pleaded where the alleged trade secrets were protected "by making those who use it subject to confidentiality provisions and limitations." 2016 WL 5338550, at *6. *Free Country* likewise concerns an alleged breach of a confidentiality provision, and not of a contract generally. 235 F. Supp. at 563 & n.1. Plaintiff's reliance on the foregoing cases is, therefore, unavailing. The DTSA contemplates the violation of an identifiable confidentiality obligation, a scenario that is not alleged in the complaint.

Moreover, the Court rejects Plaintiff's argument that Defendant's failure to disclose customers and pay Plaintiff revenue generated from such customers constitutes misappropriation under the DTSA. *See* Pl. Mem. at 12; *e.g.*, Compl. ¶¶ 2, 127. Plaintiff does not allege that Defendant induced Plaintiff to enter into the Contract in order to misappropriate use of the software, or that Plaintiff's injuries could not be remedied by a full disclosure and remittal of payments due. Indeed, Plaintiff admits that (1) it would have been satisfied were Defendant to have cured the contractual breach, Compl. ¶ 8 ("On June 6, 2018, Principia served SFG with a notice of termination that gave SFG ten days to correct the breach. SFG failed to cure in the ten day period . . . ."), and (2) the injury Plaintiff suffered was from the loss of the payments due from these unreported customers, *id.* ¶ 10 ("Principia brings this action to recover the payments, fees, and interest due under the [Contract]."). Therefore, Defendant's failure to make payments due under the Contract is not, as Plaintiff argues, "acquisition of trade secrets by improper means," Pl. Mem. at 12.

Plaintiff's allegation that Defendant failed to pay for use of PAS, *see, e.g.*, Compl. ¶¶ 1, 6, 35, 56, 57, 66, sounds in contract, not trade secrets. The complaint emphasizes the contractual nature of Plaintiff's injury. *E.g.*, Compl. ¶ 89 ("Despite the *contractual requirements* to return

7

Principia's proprietary information after the termination of the [C]ontract, SFG has not returned any documents . . . .") (emphasis added). Plaintiff merely alleges that Defendant "underreport[ed]" its customers and revenue, *see* Compl. ¶¶ 2, 126, 127, which, again, flows from its contract claim.[3] The claim that Plaintiff has suffered damages due to misappropriation of trade secrets is wholly conclusory. The Court concludes, therefore, that Plaintiff has failed to state a claim under the DTSA.[4]

Accordingly, Defendant's motion to dismiss the DTSA claim pursuant to Rule 12(b)(6) is GRANTED.

    B. State Law Claims

In addition to its DTSA claim, Plaintiff asserts state law claims for breach of contract, breach of duty of good faith and fair dealing, misappropriation of trade secrets under New York common law, fraud, and negligent misrepresentation. Defendant moves to dismiss these remaining claims pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. For the reasons set forth below, Defendant's motion is GRANTED, and the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "For purposes of

---

[3] Indeed, Plaintiff fails to allege damages flowing from any trade secrets breach that are distinct from its contractual fee losses. *See* Compl. ¶ 128 ("Principia is entitled to actual damages related to the use of the trade secrets."); *id.* ¶ 129 ("Principia is entitled to damages in the amount of fees it was entitled to under the [Contract], plus 1.5% interest under the [Contract] from the time each payment should have been made, compounded monthly.").
[4] Defendant also argues that the DTSA claim should be dismissed because it is duplicative of the breach of contract claim. Def. Mem. at 2, n.3. The Court finds no support for such a rule and, therefore, declines to adopt it here. *Cf. ExpertConnect*, 2019 WL 3004161, at *8 (dismissing breach of contract claim as redundant of DTSA claim, which was not dismissed). In any event, the DTSA claim is dismissed for failure to state a claim.

section 1367(a), claims form part of the same case or controversy if they derive from a common nucleus of operative fact." *Shahriar v. Smith & Wollensky Rest. Grp. Inc.*, 659 F.3d 234, 245 (2d Cir. 2011) (internal quotation marks and citation omitted). "In determining whether two disputes arise from a common nucleus of operative fact, we have traditionally asked whether 'the facts underlying the federal and state claims substantially overlapped . . . [or] the federal claim necessarily brought the facts underlying the state claim before the court." *Actman v. Kirby, McInerney & Squire LLP*, 464 F.3d 328, 335 (2d Cir. 2006) (internal quotation marks and citation omitted).

Here, the Court has original jurisdiction over Plaintiff's federal claim under the DTSA. The state law causes of action arise from a common nucleus of operative fact, as they all stem from Defendant's underreporting of customers and revenue derived from use of the software, and underpayment to Plaintiff.[5] However, even where a plaintiff's state law claims satisfy the "same case or controversy" requirement of § 1367(a), a court can decline to exercise supplemental jurisdiction over them pursuant to § 1367*(c)*. The Court does so decline here.

"Where section 1367(a) is satisfied, the discretion to decline supplemental jurisdiction is available only if founded upon an enumerated category of subsection 1367(c)." *Shahriar*, 659 F.3d at 245 (internal quotation marks, citation, and alternation omitted). Subsection 1367(c)'s enumerated categories are: "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining

---

[5] As the Court declines to exercise supplemental jurisdiction, it does not reach Defendant's argument that Plaintiff's state law claims in Counts 2, 4–6 are essentially duplicative of its contract claim. *See* Def. Mem. at 1–2, 5.

jurisdiction." 28 U.S.C. § 1367(c).

Here, both the second and third categories of § 1367(c) are met. The Court has dismissed the only claim over which it has original jurisdiction, and the state law causes of action arising from Defendant's failure to report and remit revenue from undisclosed customers predominate over the sole federal claim.

Before declining supplemental jurisdiction, however, the Court must also consider whether values of judicial economy, convenience, fairness, and comity would be disserved by such a decision. "[W]here at least one of the subsection 1367(c) factors is applicable, a district court should not decline to exercise supplemental jurisdiction unless it also determines that doing so would not promote the values . . . [of] economy, convenience, fairness, and comity." *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 214 (2d Cir. 2004).

Plaintiff argues that conservation of judicial resources warrants exercising supplemental jurisdiction in the event that its DTSA claim survives, for "parallel state and federal proceedings would waste judicial resources." Pl. Mem. at 18. However, with the DTSA claim dismissed, no risk of parallel proceedings remains. Plaintiff does not, moreover, offer any reason why the factors of judicial economy, convenience, fairness, and comity would weigh in favor of exercising jurisdiction in the event that the DTSA claim is dismissed. *See id.* (reciting the factors but providing no analysis).

The Court concludes, therefore, that the balance of factors counsels in favor of declining supplemental jurisdiction. Allowing Plaintiff to pursue its state law claims in state court would "avoid needless decisions of state law by this Court, which also promotes the interests of comity and justice." *Moran v. Tryax Realty Mgmt, Inc.*, No. 15 Civ. 8570, 2016 WL 3023326, at *4 (S.D.N.Y. May 23, 2016) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726

(1966)) (internal quotation marks omitted). The Court cannot "discern [any] extraordinary inconvenience or inequity occasioned by permitting the claims to be refiled in state court where they will be afforded a 'surer-footed reading of applicable law.'" *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 123 (2d Cir. 2006) (quoting *Gibbs*, 383 U.S. at 726). Although discovery is in progress, Defendant's motion is the first dispositive filing, and a trial date has not been set. This posture is, in other words, unexceptional; it is the "usual case" where a federal court should decline to exercise supplemental jurisdiction. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]f the federal claims are dismissed before trial[,] the state claims should be dismissed as well." (internal quotation marks and citation omitted)).[6] The Court, therefore, declines to exercise supplemental jurisdiction over the Plaintiff's state law causes of action pursuant to § 1367(c).

Accordingly, Defendant's motion to dismiss the state law claims, Counts 1, 2, 4, 5, and 6, is GRANTED.

## CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is GRANTED. Plaintiff's state law claims are dismissed without prejudice to refiling in state court. The Clerk of Court is directed to terminate the motion at ECF No. 28 and close the case.

SO ORDERED.

Dated: September 26, 2019
New York, New York

_____
ANALISA TORRES
United States District Judge

---

[6] *Cf. Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1192 (2d Cir. 1996) (finding no abuse of discretion in exercise of jurisdiction over state claims where federal claim was dismissed only nine days before trial); *Raucci v. Town of Rotterdam*, 902 F.2d 1050, 1055 (2d Cir. 1990) (finding no abuse of discretion in exercise of jurisdiction over state claims despite dismissal of federal claim where discovery was completed, three dispositive motions were decided, and case was ready for trial).